JUAN J. GERARDINO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent. RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 138. Argued November 3, 1947.—Decided February 20, 1948.

*Alberto Gerardino* for petitioner. *Luis Negrón Fernández, Attorney General* and *Carlos Santana Becerra* and *Elmer Toro Lucchetti*, Deputies Attorney General, for intervener, respondent in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The question presented is whether the Tax Court erred in dismissing for lack of jurisdiction the complaint filed by the petitioner for refund of $26,399.17, consisting of excise taxes, interest and penalties.

The answer to this question depends on whether the Tax Court was correct in holding (1) that the special statute for refund of excise taxes was not the exclusive remedy available to a taxpayer, but that such suits could also be brought under Act No. 169 creating the Tax Court; and (2) that although two remedies exist, under the circumstances of this case the only remedy available to the petitioner was that provided by the special statute and consequently his failure to comply with its terms deprived the Tax Court of jurisdiction to decide the case under the alternative remedy found in par. 4 of § 3 of Act No. 169.

We examine first the legislative history of the pertinent statutes. Prior to passage of Act No. 169, Laws of Puerto Rico, 1943, the judicial remedy for refund of excise taxes was exclusive and simple. Under Act No. 8, Laws of Puerto Rico, 1927, if a taxpayer believed excise taxes were not due and he wished to litigate the issue, he was required to pay under protest upon demand of the appropriate collector of internal revenue and sue for refund within a year in a court of competent jurisdiction.

Thereafter, the Legislature created the Court of Tax Appeals. Act No. 172, Laws of Puerto Rico, 1941. But that Court under § 4 had jurisdiction only of cases involving imposition of property, income and inheritance taxes. It had no jurisdiction of either refund suits in general or excise tax cases. Act No. 172 therefore had no effect on Act No. 8.

Several months after passage of Act No. 172 of 1941, the Legislature amended Act No. 8 by Act No. 17, Laws of Puerto Rico, 1941, Special Session. However, despite the creation by Act No. 172 of the Court of Tax Appeals, Act No. 17 did not vest jurisdiction in that Court over suits for refund of excise taxes. Under Act No. 17 jurisdiction of such suits was continued in the district court; but the period within which to file suit after demand and payment under protest was shortened from a year to thirty days. See *Axton Fisher Tobacco Co.* v. *Buscaglia, Treas.*, 65 P.R.R. 386.

Two years later the Legislature abolished the Court of Tax Appeals and established in its place the Tax Court. Act No. 169, Laws of Puerto Rico, 1943. For present purposes, Act No. 169 made two changes: (1) it deprived the district courts of jurisdiction of excise tax cases, which under § 4 was now vested exclusively in the Tax Court; (2) the jurisdiction of the new Court was expanded by §§ 3 and 4 to include refund suits over which the previous Court of Tax Appeals had no jurisdiction.[1]

Before Act No. 169 was approved, no judicial remedy existed for recovery by a taxpayer of a voluntary overpayment of any type of tax. Sections 64 and 75 of the Income Tax Law have always authorized the Treasurer to refund overpayments of income tax; but no judicial remedy was

---

[1] In § 4 the Legislature provided for jurisdiction of the Tax Court over cases for ''reimbursement of all kinds of taxes . . . as well as to take cognizance of taxes improperly paid, or paid in excess, or unlawfully collected, the return of which may have been refused by the Treasurer.'' And in § 3 it provided that within 30 days following notice thereof by the Treasurer, a taxpayer may institute in the Tax Court a claim based on'' . . . (4) Refusals to return any tax improperly paid, or paid in excess, or otherwise unlawfully collected . . . ''.

available to review his administrative decision denying such a petition for refund. *Bonet* v. *Yabucoa Sugar Co.,* 306 U.S. 505; *Mayagüez Light, Power & Ice Co.* v. *Buscaglia, Treas.,* 59 P.R.R. 706. In the same way, the Act of February 12, 1904 has always authorized the Treasurer to refund all types of taxes improperly paid or paid in excess; but no suit could be brought to review the decision of the Treasurer when he denied the petition for refund. *R. Santaella & Bros.* v. *Tax Court,* 66 P.R.R. 819; *Cía. Ron Carioca* v. *Tax Court,* 67 P.R.R. 662.

However, the Legislature concluded that the administrative remedy available under §§ 64 and 75 of the Income Tax Law and under the Act of 1904 [2] to obtain reimbursement for overpayment of taxes was not sufficient. In 1943 it therefore created a judicial remedy for refund of overpayment of all types of taxes which had not hitherto existed for any type of tax. Section 3, par. 4, Act No. 169. Under par. 4 a taxpayer who had overpaid his income tax could petition the Treasurer for refund under §§ 64 and 75 of the Income Tax Law. If the Treasurer denied his petition, he could now for the first time obtain judicial review of this decision under par. 4, provided he filed his complaint within 30 days after the decision of the Treasurer denying his petition for refund. *The Coca Cola Co.* v. *Tax Court,* 65 P.R.R. 142; *Royal Bank* v. *Tax Court,* 65 P.R.R. 324. Likewise, after approval of the Act of 1904, a taxpayer could apply to the Treasurer for refund of any other type of tax. And for the first time par. 4 provided for review by the Tax Court within 30 days of an administrative decision of the Treasurer refusing such a refund. *R. Santaella & Bros.* v. *Tax Court, supra; Cía. Ron Carioca* v. *Tax Court, supra.*

As soon as it was established that a taxpayer was entitled under par. 4 to sue in the Tax Court for refund of overpay-

[2] See also statutes cited in *Cía. Ron Carioca* v. *Tax Court, supra,* p. 670, footnote 3.

ment of all types of taxes, the question arose as to the period within which he must file his claim for refund with the Treasurer. There was no problem with reference to income taxes. Section 64(b) of the Income Tax Law has always provided that a refund may not be allowed unless a petition therefor is filed within 4 years of payment of the tax. *González Padín Co., Inc.* v. *Tax Court,* 66 P.R.R. 909, 932.[3]

However, as to other taxes, including excise taxes, the authority for the Treasurer to make refunds stemmed from the Act of 1904. And that Act did not contain on its face any limitation of time within which to file a claim for refund with the Treasurer. The problem of prescription was not serious as long as no judicial remedy existed to review administrative decisions of the Treasurer denying petitions for refund. But after par. 4 creating such a judicial remedy went into effect, the possibility arose that a taxpayer might file under the 1904 Act a claim that many years ago he made a voluntary overpayment of excise taxes. When the Treasurer denied this claim, the taxpayer might contend that under par. 4 he was entitled to file suit in the Tax Court within 30 days of the refusal of the Treasurer to make the refund.

To forestall this possibility, the Legislature amended the Act of 1904. Act No. 261, Laws of Puerto Rico, 1946, as amended by Act No. 388, Laws of Puerto Rico, 1947. Under these Acts the Treasurer is authorized to make a refund of taxes paid improperly or in excess of the proper amount only if the taxpayer has filed a petition with the Treasurer for refund within four years of payment.[4]

---

[3] Any possible problem as to whether a claim was made under § 64, which provides for a statute of limitations, or under § 75 of the Income Tax Law, which does not contain a prescriptive period, was eliminated by *Jones* v. *Liberty Glass Co.* 333 U. S. 850. Under the *Jones* case it is now settled that whether payment is made by the taxpayer on his own initiative or at the instance of the Treasurer is immaterial. Under both circumstances the four-year limitations period controls. See *González Padín Co., Inc.* v. *Tax Court supra,* p. 932.

[4] Cf. *R. Santaella & Bros.* v. *Tax Court, supra; Royal Bank* v. *Tax Court, supra.*

 We turn to the facts of the instant case. Unlike some of our earlier cases, these facts occurred after approval of Act No. 169 of 1943. On three different dates—October 21, 1943, December 27, 1943 and March 27, 1944—the Treasurer demanded payment by the petitioner of excise taxes on certain articles which the former attached to secure payment of the taxes. On April 28, 1944 and on May 4, 1944 the petitioner paid the taxes under protest. Thereafter, on a date not revealed by the record, the taxpayer filed with the Treasurer a petition for refund, which was denied on June 2, 1944. The taxpayer filed a complaint in the Tax Court for refund on June 19, 1944.

The petitioner would seem to have complied with par. 4. It is true that the record does not show the exact date on which he petitioned the Treasurer for refund. But it was obviously between the dates of the payments in April and May, 1944, and the denial by the Treasurer of the petition for refund on June 2, 1944. The taxpayer therefore petitioned the Treasurer for refund and sued in the Tax Court for refund within 30 days of denial of his petition, as required by par. 4.

Moreover, assuming, without deciding, that Act No. 261 of 1946 and Act No. 388 of 1947 apply with an alleged retroactive effect to this case,[5] the petitioner also complied with these Acts. As we have seen, the Act of 1904 established neither a right nor a judicial remedy; it merely authorized the Treasurer to afford the taxpayer an administrative remedy. *R. Santaella & Bros.* v. *Tax Court, supra.* And Act No. 261 by its terms likewise does not establish a right or judicial remedy. Rather it limits the authority of the Treasurer previously conferred by the 1904 Act; thereafter

---

[5] The problems of the effect of Acts Nos. 261 and 388 on claims for refund filed with the Treasurer before their passage is pending decision in this Court in *Ana María Sugar Co.* v. *Tax Court,* Cert. No. 100; *Mayagüez Light, Power & Ice Co., Inc.* v. *Tax Court,* Cert. No. 101; and *International General Electric, S.A., Inc.* v. *Tax Court,* Cert. No. 137.

he may make a refund only if the taxpayer requests the same within four years of the overpayment. But the petitioner unquestionably complied with Acts Nos. 261 and 388. His petition for refund was filed with the Treasurer on some date in 1944, which was within 4 years of his alleged overpayments made in 1943 and 1944.

Nevertheless, the Tax Court dismissed the complaint for lack of jurisdiction, under authority of its decision in *Porto Rico Iron Works Inc.* v. *Treasurer*, 4 D.T.C. 205, decided July 3, 1946.[6] Its theory was that there are two roads to the Tax Court. Under the first procedure the taxpayer is entitled to file a petition with the Treasurer for refund of taxes improperly paid, provided he files it within 4 years after the overpayment. If the Treasurer denies his petition, he is then required under this procedure to file a complaint in the Tax Court for refund within 30 days of the denial by the Treasurer of the petition for refund, pursuant to par. 4 of § 3 of Act No. 169 of 1943. The second procedure is to pay the tax under protest after demand by the Treasurer pursuant to Acts Nos. 8 and 17, and then sue for refund in the Tax Court under Act No. 169.

The Tax Court held that if the Treasurer makes a demand for excise taxes, only the second procedure is available to the taxpayer. When the Treasurer makes no demand, the Tax Court held that the first procedure is the exclusive remedy of the taxpayer.

Since the taxpayer here received a demand from the Treasurer and labelled his payment as made under protest, the Tax Court concluded that the second procedure applied here. In connection with this procedure, it held that Acts Nos. 8 and 17 must be read together with par. 5 of § 3 of Act No. 169. The theory of the Court was that under this procedure the administrative decision of the Treasurer required under § 4 of Act No. 169 to invoke the jurisdiction of

---

[6] Cf. *Buscaglia* v. *Tax Court*, 67 P.R.R. 68.

214

the Tax Court is the demand for payment by the collector of internal revenue pursuant to Acts Nos. 8 and 17, with the thirty-day period within which suit in the Tax Court must be filed after the administrative decision beginning to run from the date of payment.

The taxpayer after demand by the Treasurer paid the taxes under protest on April 28, 1944 and on May 4, 1944. As the petitioner did not file his complaint in the Tax Court until June 19, 1944, which was more than 30 days after the dates of payment, the Tax Court, under the aforesaid theory, dismissed the complaint for lack of jurisdiction.[7]

In order to pass on the issue tendered here, it is necessary to determine as a preliminary matter whether Acts Nos. 8 and 17 have survived in whole or in part after Act No. 169 was approved. Some of our analogous cases are helpful on this point. We have held that § 3 of Act No. 169 did not repeal by implication the three-fourths bond requirement of § 57(a) of the Income Tax Act when review is sought by a taxpayer in the Tax Court of a deficiency. *Mayagüez Lt., P. & I. Co.* v. *Tax Court*, 65 P.R.R. 28. In the same way, we have held that nothing in § 3 of Act No. 169 conflicts with, and therefore the latter did not repeal by implication, the provision of § 7 of Act No. 99, Laws of Puerto Rico, 1925 [8] regarding payment of that part of the inheritance tax with which the taxpayer agrees. In the same case we found that the thirty-day period for seeking review in the Tax Court did conflict with the four-month period in the

_____

[7] We conclude hereinafter that under this second procedure—Acts Nos. 8 and 17 read together with par. 5 of § 3 of Act No. 169—the 30 days run from the date of the demand, and not from the date of payment. *A fortiori*, if the Tax Court had calculated the 30 days from the dates of demand—October 21, 1943, December 27, 1943 and March 27, 1944—the complaint of June 19, 1944 was filed too late. We add the caveat that this footnote is, of course, predicated on the premise that the taxpayer was following the second procedure; but we find hereinafter that we are unable to accept this premise.

[8] For the subsequent legislative history of § 7, see Act No. 303, Laws of Puerto Rico, 1946; Act No. 432, Laws of Puerto Rico, 1947; *Araújo* v. *Tax Court*, 67 P.R.R. 821.

Inheritance Tax Law, and held that the taxpayer must sue in the Tax Court within thirty days after notice by the Treasurer that the tax was due. *Del Toro* v. *Tax Court,* 65 P.R.R. 58.[9]

Turning to excise taxes, we find that par. 5 of § 3 of Act No. 169 provides that the Tax Court may review the denial by the Treasurer of a "Request for payment by the Treasurer of Puerto Rico by virtue of any excise . . . taxes . . .". It could perhaps be plausibly argued that under par. 5 a taxpayer is entitled to proceed in the Tax Court after a mere demand and without making payment. And at first blush this might seem to conflict with, and therefore supersede, the earlier Acts Nos. 8 and 17 which require as a condition precedent to an excise tax suit that payment be made under protest. But contrary to the situation in income tax deficiency cases, *Mayagüez Lt., P. & I. Co.* v. *Tax Court, supra,* a taxpayer who files an excise tax suit in the Tax Court is not required to file a bond. Yet the rule ordinarily is that a taxpayer must pay first and litigate afterwards—or at least post a bond. *Ballester* v. *Court of Tax Appeals,* 60 P.R.R. 749, 757. The Treasurer could, of course, precipitate payment of excise taxes under protest by attachment or threat of attachment. But this would place on the Treasury Department the administrative burden of determining in which cases such action was advisable. In view of these considerations and of the reasons expressed in our earlier cases already cited in which we harmonized with Act No. 169 other procedural provisions in specific statutes covering other types of taxes, we agree with the Tax Court that par. 5 of Act No. 169 and Acts Nos. 8 and 17 should be read together, and that the taxpayer must comply with both Acts Nos. 8 and 17 and par. 5. Consequently, demand alone under par. 5 does not entitle a taxpayer to invoke the jurisdiction of the

---

[9] On a similar question involving property taxes, cf. *Figueroa* v. *Treasurer,* 2 D.T.C. 601; *Cía. Cervecera* v. *Treasurer,* 3 D.T.C. 488.

Tax Court; the taxpayer must also after demand pay under protest pursuant to Acts Nos. 8 and 17 before he is entitled to sue in the Tax Court under the second procedure.

As we have seen, the Tax Court held that under this second procedure the 30 days within which a taxpayer must file his complaint in the Tax Court runs from the date of payment rather than from the date of demand. The Tax Court undoubtedly chose the more equitable approach. But as we have indicated in our previous cases on similar problems, the later statute must prevail. Under § 4 of Act No. 169 jurisdiction of the Tax Court may not be invoked except to review an administrative decision of the Treasurer. The Tax Court holds and we agree that under this second procedure the demand of the Treasurer under par. 5 of § 3 of Act No. 169 constitutes the administrative decision of the Treasurer. And § 3 of Act No. 169 provides without qualification that suit must be within 30 days of the demand made by the Treasurer under par. 5. Although payment, by virtue of Acts Nos. 8 and 17, is also required to invoke the jurisdiction of the Tax Court, we cannot escape the conclusion that in the subsequent Act No. 169 the Legislature provided that the 30 days began to run from the date of the demand. We cannot read that mandatory provision out of the later statute. We are therefore constrained to hold that the taxpayer must both pay under protest and file his complaint in the Tax Court within 30 days of the demand. See *Del Toro* v. *Tax Court, supra;* cf. *Araújo* v. *Tax Court, supra.*[10]

---

[10] We believe it appropriate to clarify the point that a taxpayer is entitled to proceed under Acts Nos. 8 and 17 by paying under protest once he receives a demand from the Treasurer. Our income tax cases, cited in *Cía. Ron Carioca* v. *Tax Court, supra,* p. 669–70, requiring something more such as attachment or threat of attachment in order to justify the label of payment under protest, involved different considerations and do not stand in the way of our holding here that demand of excise taxes, without more, entitles the taxpayer to characterize his payment as made under protest and to proceed under Acts Nos. 8 and 17. Under those circumstances the taxpayer is doing exactly what Acts Nos. 8 and 17 require. *Oliver* v. *Treasurer,* 58 P.R.R. 65; *Pérez* v. *Court of Tax Appeals,* 61 P.R.R. 31; cf. *Blanco* v. *Court of Tax Appeals,* 61 P.R.R. 21.

Did the petitioner comply with the procedure just outlined? He labelled his payment as made under protest. But admittedly he did not file his claim within 30 days from the date of demand. He therefore did not comply with the second of the two routes to the Tax Court which the latter held existed.[11]

However, the question still remains whether failure to comply with the procedure for the second route to the Tax Court bars the petitioner from utilizing the first route. The Tax Court held that it does. As we have seen, the first route contemplates overpayment of any tax; a petition to the Treasurer within four years of the overpayment under the Act of 1904, as amended by Acts Nos. 261 and 388; and a suit in the Tax Court under par. 4 of § 3 of Act No. 169 within 30 days after the refusal of the Treasurer to make the refund. The refusal of the Treasurer constitutes the administrative decision of the Treasurer required by § 4 of Act No. 169.

We note first that the Treasurer does not concede that the Tax Court correctly held that this first procedure exists. On the contrary, he contends that par. 4 of § 3 cannot be invoked where as here the taxpayer fails to exercise in time the remedy granted by a specific statute, such as Acts Nos. 8 and 17, as read together with par. 5 of § 3 of Act No. 169. He argues that the Legislature meant to confine par. 4 to cases where the taxpayer has no other remedy.

The Treasurer points out that where disputes exist in-

---

[11] The petitioner argues that if Acts Nos. 8 and 17, together with Act No. 169, are held to govern in this case, his petition for refund filed with the Treasurer was equivalent to a petition to the Treasurer for reconsideration of the demand for payment; that under the *Provided* clause of § 3 of Act No. 169 the running of the thirty-day period is suspended if a petition for reconsideration is filed and entertained by the Treasurer; and that the complaint was consequently filed on time. Without examining other possible objections to this contention, we are compelled to reject it because the petition was never entertained by the Treasurer. He denied it summarily on June 2. The thirty-day period was therefore never suspended at any time.

volving property, income, inheritance and excise taxes, the Legislature has created by special statutes various remedies, each with a specific procedure, including such requirements as posting of bonds and periods of time within which to make payment, attach receipts and file suits. He contends that failure to comply with these requisites bars exercise of these remedies, citing *R. Santaella & Bros.* v. *Tax Court, supra,* and *Axton Fisher Tobacco Co.* v. *Buscaglia, Treas., supra.* The Treasurer therefore argues that the Legislature could not have intended by par. 4 to create an alternative remedy which would enable a taxpayer to by-pass these requirements or to relieve a taxpayer who had failed to comply with some requisite of the remedies provided in the special statutes. Paragraph 4, he asserts, comes into play not as an alternative remedy, but only in those situations where no remedy whatsoever otherwise exists.

The Treasurer overlooks the fact that the requisites of the specific statutes are in the main devices to insure payment of the taxes while the issues are litigated. But in a suit under par. 4 such safeguards of the public treasury are not necessary, as the suit is brought for refund of a tax already paid.

We cannot agree with the contention of the Treasurer that by inserting the phrase at the close of par. 4—"or otherwise unlawfully collected"—the Legislature demonstrated its intention to create a remedy only for those cases in which the taxpayer had no other remedy. The Treasurer argues that this language means that par. 4 has no application to those cases covered specially by other statutes and by other paragraphs of § 3 of Act No. 169, such as par. 5 which provides for suits based on demands of the Treasurer for excise taxes. But these words have an entirely different purpose. They are used as a clean-up phrase which under the *ejusdem generis* rule, see *Puerto Rico Ilustrado* v. *Buscaglia, Treas.,* 64 P.R.R. 870, entitles the taxpayer to sue for refund not

only for taxes improperly paid, or paid in excess, but also any other tax "unlawfully collected" in a similar manner.

The Legislature chose in par. 4 to authorize suits for refund of overpayment of taxes in broad and comprehensive language. We find nothing in that language limiting this remedy to cases where no other remedy exists. On the contrary, we have in other situations permitted suits under par. 4 where the taxpayer had failed to take advantage of other remedies available to him. Compare *The Coca Cola Co.* v. *Tax Court, supra,* with *Standard Oil Co.* v. *Tax Court,* 64 P.R.R. 641. Moreover, the fact that the procedures for the alternative remedies overlap to some extent does not prevent their coexistence. Indeed, we have seen that our tax structure is replete with overlapping procedures.

We therefore disagree with the Treasurer. And we agree with the Tax Court to the extent that it found available to the taxpayer in an excise tax case two remedies: (1) Acts Nos. 8 and 17, read together with par. 5 of § 3 of Act No. 169; (2) par. 4 of § 3 of Act No. 169. But we are unable to agree with the Tax Court that a demand from the Treasurer bars a taxpayer from invoking par. 4. It is true that where there is no demand only the remedy under par. 4 is available. But where there is a demand the taxpayer is in a position to choose between the two remedies.

The Tax Court likewise concluded that by paying under protest the taxpayer thereby selected the remedy provided by Acts Nos. 8 and 17. It cannot be gainsaid that by paying under protest the taxpayer kept alive his right to proceed under Acts Nos. 8 and 17. But it by no mean follows that the payment under protest was an irrevocable choice by the taxpayer of the remedy provided by Acts Nos. 8 and 17, thereby closing the door to the remedy contained in par. 4.

We would agree with the Tax Court that payment under protest was the decisive fork in the road leading exclusively

to Acts Nos. 8 and 17 if par. 4 provided that it did not apply to payments under protest. But par. 4 neither expressly nor implicitly bars suits thereunder where payment is made under protest. Nor does par. 4 limit the remedy provided therein to cases of voluntary overpayment. On the contrary, its language is sweeping: it applies to all overpayments. Whether you label your payment voluntary or under protest, par. 4 says without qualification that you may sue for refund.

The truth is that the phrase "payment under protest" lost most of its magic in this jurisdiction when the Legislature enacted par. 4. Prior thereto the failure to pay under protest meant that no judicial remedy existed to recover overpayments.[12] When par. 4 changed this situation, it provided for refund suits, without reference to the voluntary or involuntary nature of the payment. Consequently, the fact that a taxpayer who pays excise taxes under protest fails thereafter to avail himself of the remedy provided by Acts Nos. 8 and 17 does not necessarily mean that he is also barred from utilizing the different remedy provided by par. 4.

There may be other cases in which we would be warranted in holding that a taxpayer has made an election between two remedies which bars him from initiating a new suit under a second remedy when for some reason he fails in a previous suit pursuant to the first remedy. But the difficulty here is that we cannot say that the petitioner had irrevocably chosen the remedy prescribed by Acts Nos. 8 and 17. This is primarily because under either remedy payment is the first step taken by the taxpayer. It is true the petitioner labelled his payment "under protest". But that is not in itself controlling. Even after such a payment the taxpayer still has the choice of proceeding thereafter either under Acts Nos.

---

[12] Cf. *Blanco* v. *Court of Tax Appeals,—supra,*—and *Royal Bank* v. *Tax Court, supra,* where we held the tax was voluntarily paid although labelled by the taxpayer as paid under protest. Under some circumstances the converse may be true: the failure as here to take further steps under Acts Nos. 8 and 17 results in effect in the loss of the label of payment under protest.

8 and 17 or under par. 4. The decisive step is therefore the next step. And here we find the action of the petitioner entirely consistent with the requirements of par. 4. He petitioned the Treasurer for refund within 4 years of payment; and he sued in the Tax Court within 30 days of denial of his petition. On the other hand, if we treat his payment as made under protest for the purpose of invoking the remedy provided under Acts Nos. 8 and 17, he should not have waited to petition the Treasurer for refund. Instead he should within 30 days of demand have both paid under protest and filed his suit; consequently, his suit here, if held to be under Acts Nos. 8 and 17, would be out of time as it was filed more than 30 days after the demand.

We are aware that the result we reach makes it difficult, if not impossible, in some cases to determine which remedy the taxpayer is pursuing until he files his complaint in the Tax Court.[13] But we see no fundamental objection to that result. It serves the purpose of giving taxpayers a decision on the merits instead of decision on procedural grounds. And in any event, the situation is not of our making; the matter is within the province of the Legislature.

To summarize, when the Treasurer demands payment [14] of excise taxes, a taxpayer has a choice of two remedies. Under the first remedy he must, without waiting to petition

---

[13] In income taxes the choice of remedies by a taxpayer is easier to ascertain. Unlike excise tax cases, where payment is the first step under both alternatives, when a taxpayer resists a notice of deficiency, he does not pay the tax. Instead, he posts a bond of not less than ¾ of the tax and sues in the Tax Court. *Mayaguez Lt., P. & I. Co.* v. *Tax Court, supra.* Under his alternative remedy, instead of failing to pay, he pays and sues for refund. *The Coca Cola Co.* v. *Tax Court, supra.*

[14] Taxpayers sometimes pay without demand to avoid interest and penalties. See §§ 39 and 50 of the Internal Revenue Law, as amended by Act No. 78, Laws of Puerto Rico, 1945, and Act No. 426, Laws of Puerto Rico, 1947. But if no demand is made, the procedure contemplated by Acts Nos. 8 and 17 never comes into play. This proceeding requires both demand by the Treasurer and payment under protest by the taxpayer, followed by suit in the Tax Court within 30 days of the demand. Consequently, if payment is made without demand, the taxpayer has only one remedy; i.e., that afforded by par. 4.

the Treasurer, pay the tax after demand under protest and sue in the Tax Court for a refund within thirty days of the demand. Pursuant to the second remedy, the first step is the same: he pays the tax. The taxpayer may exercise his choice between the two remedies at that point by paying voluntarily. If he does, he has closed the door to the remedy he otherwise had under Acts Nos. 8 and 17. But if he wishes to postpone his election between the remedies until a later time, he may pay under protest. Under the latter circumstances he may still choose between the paths available under Acts Nos. 8 and 17 and under par. 4, respectively, to reach the Tax Court. This is because par. 4 provides a remedy—whether taxes are paid voluntarily or under protest. His choice therefore does not become final until the next stage: under Acts Nos. 8 and 17 he must without recourse to the Treasurer pay under protest and sue in the Tax Court within 30 days after demand; under par. 4 he must file a petition with the Treasurer for refund, which must be done within 4 years of the payment, and then sue in the Tax Court within 30 days of the denial of his petition by the Treasurer.

We recognize that Acts Nos. 8 and 17 have lost some of their vigor. Under our ruling, even if payment is made ''under protest'', a taxpayer is not required to proceed within 30 days in the Tax Court of demand as established by Acts Nos. 8 and 17, read together with par. 5 of § 3 of Act No. 169. Instead he may choose to treat his payment as an overpayment as defined in par. 4, and at any time up to 4 years after the payment, petition the Treasurer for refund, and then sue in the Tax Court after refusal by the Treasurer of his petition. But Acts Nos. 8 and 17 still remain in effect for those who prefer to act more promptly: they may on demand pay under protest and proceed forthwith—that is, within 30 days of demand—in the Tax Court without the delay involved in petitioning the Treasurer for refund. And even more important, by choosing to proceed under par. 4 of § 3 of Act

No. 169, the taxpayer loses the 6 per cent annual interest from the date of the filing of the complaint which the taxpayer collects if he sues under Acts Nos. 8 and 17 read together with par. 5. *Buscaglia* v. *Tax Court,* 67 P.R.R. 68.

It is true that this makes uncertain the public revenue for four years and thirty days. During that time a taxpayer may petition the Treasurer and then sue in the Tax Court for refund of an overpayment, whether it was made voluntarily or under protest. But that is exactly what par. 4—together with the limitation periods of § 64(b) of the Income Tax Law and Act No. 261 of 1946—prescribe. The Legislature opened the door to such suits. It is not for us to shut it.[15]

We note in passing that the Federal cases do not hold the contrary. The alternative judicial remedies which exist in the Federal system for income and related tax cases only—refund suits are the exclusive remedy for excise tax cases—are (1) in the Tax Court for redetermination of deficiencies determined by the Commissioner; and (2) generally speaking, in the Court of Claims or the district courts for refund of taxes already paid. 10 Mertens, Law of Federal Income Taxation, § 58.45, pp. 345–47.[16] Once a deficiency is paid

---

[15] *Gonzȧlez Padín Co., Inc.* v. *Tax Court,* 66 P.R.R. 909, 937, is not inconsistent with the view we take here. The question there was whether a petition for refund of income tax could be filed without any limitation of time pursuant to the Act of 1904, despite the provisions of § 64(a) and (b) of the Income Tax Act that petitions for refund of income tax must be filed within four years. We held that the special statute, § 64, and not the general statute, the 1904 Act, governs where they both cover precisely the same action: a petition for refund. It is true that here we also have a special statute (Acts Nos. 8 and 17) as against a general statute (par. 4) which provides in the one case for payment under protest and in the other for payment, either voluntarily or "under protest". The distinction, however, lies in the fact that, as we have seen, the next step is different under the respective statutes. The special statute therefore does not, as in the *Padín* case, override the general statute. They both remain in effect side by side and provide alternative remedies and procedures.

[16] If the taxpayer, after he files his petition in the Tax Court, pays the tax to prevent the running of interest, the Tax Court retains jurisdiction. Section 322(d), I.R.C. Likewise, once a petition for redetermination of a deficiency is filed in the Tax Court, all claims for refund involved in that same year are

before suit in the Federal Tax Court, the only remedy available is in the district court or Court of Claims. But we have seen that in this jurisdiction, under our statutes providing alternative remedies, payment of excise taxes is not the decisive step which determines the election the taxpayer has made. Moreover, even in the Federal system an abortive suit in the Federal Tax Court is not fatal. If the petition is not filed in the Federal Tax Court within the period prescribed by statute, that Court has no jurisdiction; but the petitioner may still pay the deficiency and sue for refund in the district court. *Beacon v. Commissioner*, P. H. Tax Court Memorandum Decisions Service, par. 45,172, as quoted in Griswold, Cases and Materials on Federal Taxation, Second Ed., pp. 94–97.

We conclude that when the petitioner paid his tax, whether he called it voluntary or under protest, he had not made any election of remedies. Having paid it under protest, he could have turned to Acts Nos. 8 and 17, and sued within 30 days of the demand of the Treasurer in the Tax Court, without further recourse to the Treasurer, provided he also paid under protest before the thirty days expired. Under those circumstances, the administrative decision required by § 4 of Act No. 169 to give jurisdiction to the Tax Court is the demand of the Treasurer. The taxpayer did not take this action. But that did not cut off his remedy under par. 4. His election to proceed under par. 4 came, at the earliest, when within four years of the overpayment, he petitioned the Treasurer for a refund. On denial of this petition, under par. 4 he was entitled, as he did here, to sue within thirty days in the Tax Court for refund. The Tax Court there-

decided by the Tax Court. This is designed to avoid determination of income tax liability for a particular year piecemeal. Section 322(c), (d), I.R.C. But it must be noted that this choice of remedy becomes effective only after suit is filed under one of the alternatives. Our case is different in that no suit was filed pursuant to the remedy provided by Acts Nos. 8 and 17, read together with par. 5 of § 3 of Act No. 169.

fore erred in dismissing the complaint for lack of jurisdiction.[17]

Except that it was silent as to the points (1) that payment under protest does not constitute an irrevocable choice by the taxpayer of the remedy under Acts Nos. 8 and 17, and (2) that under the latter procedure the thirty days within which to sue in the Tax Court begin to run from the date of the demand, the Tax Court came to the same conclusions as we do here in *Moscoso Hnos. Inc.* v. *Treasurer*, 2 D.T.C. 570. The Tax Court, however, subsequently refused to follow its *Moscoso* decision in the *Porto Rico Iron Works* case and in this case.

. We close by pointing out that almost three years have passed since we said in *Mayagüez Lt., P. & I. Co.* v. *Tax Court, supra*, p. 31: ". . . we trust it is not amiss for us to suggest that . . . an effort be made to devise a plain, uniform and integrated procedural statute for all tax litigation. Decisions by this court can only operate as a palliative; the cure is in the hands of the Legislature."

This situation has not yet been corrected. Meanwhile, only an oracle is able to point out the proper procedural road in our tax cases. The distinctions we have been compelled to draw "hardly can be held in the mind longer than it takes to state them . . ."[18] Litigants continue to flounder in a morass of procedure. And when they finally file suit they must ride the merry-go-round of conflicting statutes to the tune of time, money and energy consumed by all concerned to no constructive purpose except as an exercise in dialectics.

---

[17] We are not concerned here with the problem of whether par. 4 was intended to revive causes of action which were barred, both as to right and remedy, because the taxpayer did not avail himself in time of the remedy provided by the laws in force at the time of payment of the sums he was now claiming. Cf. *R. Santaella & Bros.* v. *Tax Court, supra*. *Royal Bank* v. *Tax Court, supra*. Here the taxpayer paid his tax in 1944 after par. 4 went into effect. Obviously, he was entitled to chose to sue in the Tax Court pursuant to the alternative remedy provided by par. 4.

[18] *Burton-Sutton Oil Co.* v. *Comm'r.*, 328 U. S. 25, 38, separate opinion of Mr. Justice Frankfurter.

Although not so intended by the Legislature, these procedural statutes consist almost entirely of a series of elaborate booby traps. They deserve no place in a modern taxing system, the first requisite of which is that decision in a tax dispute between the government and a citizen shall be rendered on the merits, and not on some crazy quilt of procedural niceties.

The decision of the Tax Court will be reversed, and the case remanded for further proceedings not inconsistent with this opinion.